UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN HERRERA, | Case No. 1:21-cv-01070-HBK (PC) |
| Plaintiff, | ORDER TO ASSIGN A DISTRICT JUDGE |
| v. | FINDINGS AND RECOMMENDATIONS TO DISMISS CASE[1] |
| BRANDON PRICE, | (Doc. No. 7) |
| Defendant. | 14-DAY OBJECTION PERIOD |

Pending before the Court is the first amended pro se civil rights complaint filed under 42 U.S.C. § 1983 by Ruben Herrera—a civil detainee. (Doc. No. 7, "FAC"). Upon review, the undersigned finds the FAC fails to state any cognizable federal claim and recommends the district court dismiss this case for failure to state a claim under 28 U.S.C. § 1915(e)(2)(b)(ii).

**BACKGROUND AND SUMMARY OF OPERATIVE COMPLAINT**

Plaintiff initiated this action by filing a civil rights complaint under 42 U.S.C. § 1983. On June 8, 2023, the undersigned screened the Complaint under 28 U.S.C. § 1915 and found that it failed to state any cognizable constitutional claim. (*See* Doc. No. 6). The undersigned afforded Plaintiff the option to either (1) file an amended complaint; (2) stand on his Complaint subject to the undersigned recommending the District Court dismiss the complaint; or

---
[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2022).

(3) voluntarily dismiss the case. (*Id*. at 17-18). On June 26, 2023, Plaintiff timely filed an amended complaint. (Doc. No. 7).

The events giving rise to the FAC took place at Coalinga State Hospital ("CSH") where Plaintiff is currently a detainee. Plaintiff names as sole Defendant Brandon Price, the Executive Director of CSH. (Doc. No. 7 at 1). The following facts are presumed true at this stage of the screening process.

In March of 2020, the CSH instituted hospital-wide COVID-19 protocols that included quarantine of units, restricted access to visits, and limited group access. (Doc. No. 7 at 3). Outside visits were limited to a maximum of two hours, no outside food was allowed, and no food or beverage from the vending machines was allowed to be consumed while in the visiting room. (*Id*. at 4). CSH later relaxed these policies through an update to Administrative Directive 738[2], which governs hospital visits, and currently allows visitors to stay for an entire day and allows them to bring in food so long as it meets the guidelines of hospital policy. (*Id*.).

The FAC states:

> While Plaintiff considers [the changes implemented during the COVID-19 pandemic] warranted, he can also feel for other people's families who may be diabetic or have other medical needs that require them to drink water or eat food, at which time their visit could or would be terminated for lack of food or drink being available and said visitors having to leave to take care of their medical need.

(*Id*.). The FAC asserts that "on May 11, 2023, Public Health decreed that the covid crisis has ended and that the hospital can return to normal operation. Therefore, there is no longer a reason for Defendant to continue with the practice of limiting and altering the policies of A.D. 738." (*Id*. at 5).

As relief, Plaintiff seeks injunctive relief "preventing Defendant from continuing pattern of denying former way of visitation; declaratory relief ordering Defendant to cease and desist

---

[2] In the FAC, Plaintiff does not allege a date the visitation policy was relaxed. While an amended complaint must be freestanding and complete, *see Forsyth v. Humana*, 114 F.3d 1467, 1474 (9th Cir. 1997), here the Court liberally construes Plaintiff's pro se pleadings and garners the relevant date from Plaintiff's original Complaint. *See Yong Lor v. Asuncion*, 2018 WL 6177228, at *1 (C.D. Cal. Aug. 21, 2018). The Complaint contains a copy of the revised visitation policy, which was issued July 2, 2021. (Doc. No. 1 at 9-11).

current practices which are harming Plaintiff." (*Id.*). Plaintiff also seeks "any and all other relief that the court deems just and appropriate" including damages and costs, including "costs incurred when Plaintiff's wife had to stay at hotel for weekends to visit for days instead of just one day over a weekend because visits were restricted to only one, two-hour visit per day." (*Id.* at 5).

## APPLICABLE LAW AND ANALYSIS

### A. Screening Requirement

A plaintiff may bring an action under 42 U.S.C. § 1983 to remedy violations of "rights, privileges, or immunities secured by the Constitution and [federal] laws," that were perpetrated by a person or entity, including a municipality, acting under the color of state law. 42 U.S.C. § 1983; *see also Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-95 (1978). Because Plaintiff is proceeding *in form pauperis*, (Doc. No. 4), the Court may dismiss a case "at any time" if the Court determines, *inter alia*, the action fails to state a claim or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C § 1915(e)(2)(B)(ii)-(iii).

However, a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim that would entitle him to relief. *Johnson v. Knowles,* 113 F.3d 1114, 1117 (9th Cir. 1997), *cert. denied,* 552 U.S. 996 (1997). Dismissal for failure to state a claim in this context is governed by the same standard as dismissal under Federal Rule of Civil Procedure 12(b)(6). *Barren v. Harrington*, 152 F. 3d 1193, 1194 (9th Cir. 1998). As such, a complaint must contain sufficient factual matter to state a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A complaint is plausible on its face when it contains sufficient facts to support a reasonable inference that the defendant is liable for the misconduct alleged." *Id*. At this stage, the court accepts the facts stated in the complaint as true. *Hosp. Bldg. Co. v. Rex Hosp. Tr.*, 425 U.S. 738, 740 (1976). The Court does not accept as true allegations that are merely conclusory, unreasonable inferences, or unwarranted deductions. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Nor are legal conclusions considered facts. *Iqbal*, 556 U.S. at 678.

Because Plaintiff is proceeding pro se, the Court liberally construes the pleading in the light most favorable to the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Bernhardt*

1 *v. L.A. County*, 339 F.3d 920, 925 (9th Cir. 2003).  If a pleading could be cured by the allegation
2 of other facts, a pro se litigant is entitled to an opportunity to amend a complaint before dismissal
3 of the action.  *See Lopez v. Smith*, 203 F.3d 1122, 1127-29 (9th Cir. 2000) (en banc); *Lucas v.*
4 *Department of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).  However, it is not the role of the Court to
5 advise a litigant on how to cure the defects.  Such advice "would undermine district judges' role
6 as impartial decisionmakers."  *Pliler v. Ford*, 542 U.S. 225, 231 (2004); *see also Lopez*, 203 F.3d
7 at 1131 n.13.

### B. Plaintiff's Request for Injunctive Relief

It is unclear from the FAC whether Plaintiff is challenging policies currently in effect or only those in place during the COVID-19 pandemic.  To the extent that some or all the policies described by the FAC are no longer in effect, Plaintiff's request for injunctive relief is moot. *Bayer v. Neiman Marcus Grp.*, 861 F.3d 853, 864 (9th Cir. 2017) ("[a] request for injunctive relief remains live only so long as there is some present harm left to enjoin.") (quoting *Taylor v. Resolution Trust Corp.*, 56 F.3d 1497, 1502 (D.C. Cir. 1995)).  "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."  *O'Neal v. City of Seattle*, 66 F.3d 1064, 1066 (9th Cir. 1995) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). "Thus, a claim for injunctive relief becomes moot once subsequent events have made clear the conduct alleged as the basis for the requested relief 'could not reasonably be expected to recur.'" *Bayer*, 861 F.3d at 864 (quoting *Ruiz v. City of Santa Maria*, 160 F.3d 543, 549 (9th Cir. 1998)). Plaintiff nevertheless also seeks monetary relief his FAC, so the undersigned considers whether the FAC otherwise states a viable federal claim.

### C. Due Process Claim

The FAC contends that "Plaintiff's right to Due Process of law was violated when Defendant amended hospital policy without following the Administrative Procedure Act and proceeded to keep policy changed when the warranted emergency no longer existed."  (Doc. No. 7 at 3).  The FAC asserts that changes to hospital policy must "be made through the Administrative Procedure Act as guided through CCR Title 1 subsection 250(a)."  (*Id*. at 4).

As an initial matter, Defendant's alleged violations of state law, assuming *arguendo* they are true, do not constitute constitutional violations. *See Samson v. City of Bainbridge Island*, 683 F.3d 1051, 1060 (9th Cir. 2012) ("It is axiomatic . . . that not every violation of state law amounts to an infringement of constitutional rights.") (citing *Paul v. Davis*, 424 U.S. 693, 700 (1976)). "Unless there is a breach of constitutional rights, . . . § 1983 does not provide redress in federal court for violations of state law." *Schlette v. Burdick*, 633 F.2d 920, 922 n. 3 (9th Cir. 1980). Indeed, the Court has found no authority to support an implied private right of action under Title 1 of the California Code of Regulations and Plaintiff has provided none. *See Vasquez v. Tate*, 2012 WL 6738167, at *9 (E.D. Cal. Dec. 28, 2012) (finding no federal due process violation based on prison's failure to comply with Title 15 of the CCR because no authority establishes the existence of a private right of action). Accordingly, Plaintiff cannot bring suit under § 1983 based on the alleged violations.

Even assuming a private right of action exists, the FAC does not allege in what way Defendant Price's alleged failure to follow the APA harmed him. Pursuant to Article III of the U.S. Constitution, federal courts are courts of limited jurisdiction, hearing only live "cases" and "controversies." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992); U.S. Const. art. III, § 2. To satisfy the case-or-controversy requirement, the plaintiff must establish "(1) [A]n 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). Here, Plaintiff alleges that his wife incurred certain costs as a result of the COVID-era policy limiting visits to two hours, however, the FAC does not allege that the failure to follow unspecified provisions of the APA in issuing the COVID directive caused any costs or any other harm to Plaintiff.

Accordingly, because there is no private right of action under the CCR provisions cited by Plaintiff, and because the FAC fails to allege an injury in fact caused by Defendant Price's failure to follow applicable CCR provisions or the APA, the FAC fails to state a cognizable due process

claim under the Fourteenth Amendment.

### D. Fourteenth Amendment Conditions of Confinement

The FAC next asserts that Plaintiff is being subjected to, or was subjected to, cruel and unusual punishment based on "Defendant's willful and deliberate indifference in refusing to change [the visitation] policy back to pre-covid standards." (*Id*. at 4).

Under the Due Process Clause of the Fourteenth Amendment, "an individual detained under civil process . . . cannot be subjected to conditions that 'amount to punishment.'" *Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004) (*quoting Bell v. Wolfish*, 441 U.S. 520, 536 (1979)). Conditions of confinement are presumptively punitive if they are "identical to, similar to, or more restrictive than, those in which [a civil pre-trial detainee's] criminal counterparts are held." *Id*.; *see also Youngberg v. Romeo*, 457 U.S. 307, 321–22 (1982) (requiring civil detainees be given "more considerate treatment" than criminal detainees). If a detainee can establish the existence of conditions that are presumptive punitive, the burden shifts to the defendant to show (1) "legitimate, non-punitive interests justifying the conditions of [the detainee's] confinement" and (2) "that the restrictions imposed . . . [are] not 'excessive' in relation to these interests." *Id*. at 935.

The FAC alleges that the current visitation policy sets no time limit on visits and visitors are allowed to bring in outside food if it meets hospital guidelines. (Doc. No. 7 at 4). Visitors can also purchase food from the vending machines to consume during a visit. (*Id*.). The FAC does not identify any current policies it alleges to be overly restrictive or punitive. There are no facts alleging that the visitation policies at CSH are "identical to, similar to, or more restrictive than" those applicable to a criminal inmate. To the extent the FAC challenges the current policies, Plaintiff has not made a prima facie showing that those policies are punitive to violate Plaintiff's Fourteenth Amendment rights.

Plaintiff appears to take issue only with the COVID-era policies that restricted bringing food into the visitation rooms, noting that this may cause hardship to diabetic visitors or those with medical conditions. (*Id*.). He also notes that the policy caused his wife to spend additional money to stay multiple days when visiting him. (Id. at 5). To the extent Plaintiff alleges the prior

6

COVID-era policies were unduly restrictive, the Court has previously noted the "legitimate, non-punitive interests justifying" the application of restrictive COVID policies from March 2020 to July 2021. (*See* Doc. No. 6 at 6). The United States Supreme Court has found that "[s]temming the spread of COVID-19 is unquestionably a compelling interest." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020). The restrictions at CSH described by Plaintiff— limited physical contact with visitors, restrictions on eating and drinking (activities that are commonly known to increase the risk of transmitting COVID-19), and time limits on visits are all rationally related to the purported health and safety goals of the restrictions at CSH. Indeed, Plaintiff himself concedes that the COVID-era policies were "warranted." (Doc. No. 7 at 4). To the extent Plaintiff claims there are still restrictive visitation policies in place this contradicts statements made elsewhere in the FAC, (*see id.* at 4) and is inconsistent with his previous filing. Because there are no facts alleging that CSH currently applies a restrictive visitation policy, the Court assumes Plaintiff's claim relates only to the COVID-era restrictions. And as noted above, it is well-established that the COVID crisis represented a "compelling interest" justifying restrictions of the type CSH implemented in 2020 and the first half of 2021. Accordingly, the restrictions were not punitive in nature, and the FAC fails to state a cognizable conditions of confinement claim.

### E. First Amendment Freedom of Association

Liberally construed, Plaintiff also alleges that the previous restrictions on visitation at CSH implemented by Defendant Price infringed on his First Amendment right to freedom of association. While a confined person's right of association is not "altogether terminated by incarceration," the Supreme Court has recognized that "freedom of association is among the rights least compatible with incarceration." *Overton*, 539 U.S. at 131; *see also MacDonald v. Harold*, 2022 WL 205671 (D. Or. Jan. 24, 2022) (applying *Overton* to former pretrial detainee's challenge to COVID-19 restrictions on visitation rights and finding no First Amendment violation). "It is well established that prisoners do not have an absolute right to receive visits from family members while they are incarcerated." *Cerniglia v. Carona*, 2010 WL 4823896, at *3 (E.D. Cal. Nov. 12, 2010), (citing *Dunn v. Castro,* 621 F.3d 1196, 1201 (9th Cir. 2010).

1   While Plaintiff, as a civil detainee, is to be afforded more considerate treatment than a prisoner,
2   *Youngberg,* 457 U.S. at 322, the Constitution does not require that detainees be allowed contact
3   visits. *Block v. Rutherford,* 468 U.S. 576, 589 (1984). However, a denial of visitation that was
4   permanent or continued for a long period of time might rise to the level of a constitutional
5   violation. *Dunn,* 621 F.3d at 1203-04.

6     A regulation that impinges on constitutional rights protected under the constitution "is
7   valid if it is reasonably related to legitimate . . . interests." *Turner v. Safley*, 482 U.S. 78, 89
8   (1989). To determine whether a regulation is reasonable, the court looks at four factors: (1)
9   whether there is "a 'valid, rational connection' between the . . . regulation and the legitimate
10  governmental interest put forward to justify it;" (2) "whether there are alternative means of
11  exercising the right that remain open;" (3) "the impact accommodation of the asserted
12  constitutional right will have on prison staff, on inmates' liberty, and on the allocation of limited
13  prison resources, which impact, if substantial, will require particular deference to corrections
14  officials;" and (4) "whether the regulation represents an 'exaggerated response' to prison
15  concerns, [and] the existence of a ready alternative that fully accommodates the prisoner's rights
16  at *de minimis* costs to valid penological interests . . . ." *Id*. at 89-90 (citations omitted).
17  As noted above, the United States Supreme Court has found that "[s]temming the spread of
18  COVID-19 is unquestionably a compelling interest." *Roman Cath. Diocese of Brooklyn*, 141 S.
19  Ct. at 67. The restrictions at CSH described by Plaintiff—limited physical contact with visitors,
20  restrictions on eating and drinking, and time limits on visits are all rationally related to the
21  purported health and safety goals of the restrictions at CSH. Plaintiff does not plead any facts as
22  to whether CSH made available alternatives to in-person visitation. However, the March 9, 2021
23  letter to Plaintiff from the Office of Human Rights, attached to his original Complaint, notes that
24  "[y]our right to visitation has not been violated because you have the option to have a video-visit
25  (tele-visit)." (Doc. No. 1 at 8). This suggests that Plaintiff did have ready alternatives to in-
26  person visitation. There are insufficient facts before the Court to fully analyze the remaining
27  *Turner* factors. Based on the facts alleged, however, the Court concludes that the CSH visitation
28  policy was reasonable considering the compelling interest in protecting inmates, staff, and visitors

1  from the transmission of COVID-19.

2      Plaintiff does not allege any facts concerning the duration of the restrictions, but
3  according to the July 3, 2021 revised policy attached to Plaintiff's original Complaint, the
4  restrictions were lifted around the time he filed this lawsuit, which further indicates that the
5  policy was not of excessive duration and thus undermines Plaintiff's claim that it was
6  unconstitutional.  (*See* Doc. No. 1 at 1); *Dunn,* 621 F.3d at 1203-04.  Accordingly, CSH's
7  restrictions did not impermissibly infringe on Plaintiff's right to freedom of assembly, and he fails
8  to state a cognizable First Amendment claim.  *See United States v. Topps*, 2020 WL 5890433, at
9  *14-16 (D. Alaska Oct. 1, 2020) (upholding visitor restrictions imposed in response to the
10 COVID-19 pandemic); *United States v. Kemmerer*, 2020 WL 4697982, at *9-10 (S.D. Cal. Aug.
11 13, 2020) (accord).

12     **CONCLUSION**

13     For the reasons set forth above, the undersigned finds that Plaintiff's FAC fails to state
14 any cognizable federal claim against Defendant Price.  The undersigned finds further leave to
15 amend this claim is not warranted because Plaintiff failed to cure the deficiencies in his original
16 Complaint despite being advised of the governing case law above.  *Ferdik v. Bonzelet*, 963 F.2d
17 1258, 1261 (9th Cir. 1992) (noting discretion to deny leave to amend is particularly broad where
18 court has afforded plaintiff one or more opportunities to amend his complaint); *see also Saul v.
19 United States*, 928 F.2d 829, 843 (9th Cir. 1991) (A district court can deny leave "where the
20 amendment would be futile . . . or where the amended complaint would be subject to dismissal").
21 The undersigned will therefore recommend Plaintiff's case be dismissed for failure to state a
22 claim.

23     Accordingly, it is **ORDERED**:
24     The Clerk of Court is directed to assign a district judge to this case.
25     It is further **RECOMMENDED**:
26     Plaintiff's First Amended Complaint (Doc.  No. 7) be dismissed for failure to state a claim
27 pursuant to 28 U.S.C. § 1915(e)(2)(b)(ii).
28     ////

NOTICE TO PARTIES

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with these findings and recommendations, a party may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Dated:   October 31, 2023

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE